# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

GEORGE HASKO and
GEORGE HASKO ENTERPRISES, INC,

    Plaintiffs,

  v.

FRANCHOICE, INC. and
CAREYANN GOLLIVER,

    Defendants.

Case No. 19-cv-702 (MJD/ECW)


**REPORT AND RECOMMENDATION**

---

This matter is before the Court on Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6). (Dkt. 16.) This case has been referred to the undersigned United States Magistrate Judge for a report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. For the reasons discussed below, the Court recommends that Defendants' Motion for Partial Dismissal Pursuant to Rule 12(b)(6) be denied.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs initiated this action on March 15, 2019. (Dkt. 1.) Defendants subsequently moved to dismiss the Complaint. (Dkt. 8.) That motion was withdrawn after Plaintiffs filed an Amended Complaint. (Dkt. 20.)

The operative Amended Complaint alleges as follows: Plaintiff George Hasko ("Hasko"), who resides in and is a citizen of New Jersey, owns George Hasko Enterprises, Inc., a New Jersey corporation with its principal place of business in New Jersey. (Dkt. 15 ¶¶ 4-5.) Hasko became interested in purchasing a franchise in late 2015.

(*Id.* ¶ 11.)  To this end, he was introduced to Defendants FranChoice, Inc. ("FCI") and Careyann Golliver ("Golliver").  (*Id.*)  FCI is a corporation formed under the laws of Minnesota, with its principal place of business in Eden Prairie, Minnesota.  (*Id.* ¶ 6.)  It is a franchise broker that assists prospective franchisees in identifying, investigating, selecting, and acquiring franchises.  (*Id.*)  Golliver, an FCI representative, is an individual residing in Parker, Colorado, and is a citizen of that state.  (*Id.* ¶ 7.)

Through its website (https://www.franchoice.com/), FCI held itself out as directing prospective franchisees to "high quality franchise businesses that match your requirements" and represented that it would match "entrepreneurs like you with the perfect franchise business."  (*Id.* ¶ 12.)  FCI stressed that Plaintiffs could "avoid the confusion of researching" franchise opportunities and could focus on those franchises that FCI had "selected . . . as franchise businesses matching [their] requirements."  (*Id.*)  FCI further represented that "[t]hey will be by your side coaching you and making sure you are getting the information you need in order to make the best decision for you."  (*Id.*)

Golliver held herself out on her own website, www.franchise-logic.com, as a "franchise expert," an "award-winning franchise consultant," and a "former franchisor" who was "in continuous contact with the safest, most lucrative and fastest-growing franchises."  (*Id.* ¶ 13.)  Golliver stated that she prides herself on "working with only the best of the best franchise organizations represented today."  (*Id.*)

Golliver emailed Hasko on January 20, 2016, introducing herself and representing that Guidant Financial asked that she reach out to Hasko directly given that he was "in

the market looking for some solid business opportunities to research." (*Id.* ¶ 14.)

On February 9, 2016, Hasko had an introductory phone call with Golliver, after which she emailed Hasko. (*Id.* ¶ 15.) Golliver asked Hasko to go to the FCI website where he could complete a questionnaire about his franchise search. (*Id.*) After Hasko completed the FCI questionnaire, he had another phone call with Golliver on February 23, 2016. (*Id.* ¶ 16.) During this call, Golliver mentioned a "boutique fitness" opportunity called ILoveKickBoxing, which offered fitness studios featuring kickboxing. (*Id.*) She also provided Hasko with the names of two other unrelated and unnamed companies. (*Id.*) Although she encouraged Hasko to contact all three, she pushed ILoveKickBoxing as the best choice for him. (*Id.*) Non-party ILKB, LLC ("ILKB") is the franchisor of "iLoveKickboxing.com" franchises, which are fitness facilities dedicated to kickboxing, a form of physical fitness. (*Id.* ¶ 8.) At all relevant times, ILKB was a New York limited liability company with its headquarters in New York State. (*Id.*) ILKB offered and sold franchises only in and from New York State. (*Id.*)

On February 23, 2016, Golliver emailed Hasko stating, "[a]s I mentioned during our conversation, the companies we discussed are not only great matches to your model, but they are also some of the fastest growing franchises in the United States." (*Id.* ¶ 17.) Golliver also encouraged Hasko in this email to act quickly in making a purchase, saying "these companies are experiencing tremendous demand for franchises" and "I am able to firmly place you at the front of the line of potential franchisees; however, I cannot keep you there. Only you can do that." (*Id.*)

On February 23, 2016, in a phone call, Golliver made several representations to

Hasko, including that: the ILKB franchise business was suitable for absentee ownership, meaning that Hasko would only need to put in 5 to 10 hours a week supervising a manager; marketing was the key to ILKB and if Hasko followed the franchisor's instructions, the concept was 93 percent successful; ILKB had never had a single closure; the average net profit was about $10,000 per month; and owners could expect to make a six figure income easily.  (*Id.* ¶ 19.)  Had the representations of FCI and Golliver concerning the franchise's revenue and profitability been true, Plaintiffs would have had annual profits totaling $120,000 per studio for a period of 5 years, or a total of $3 million. (*Id.* ¶ 21.)

After speaking with ILKB, Hasko sent Golliver a text message on March 1, 2016, stating that he had just gotten off the phone with an ILKB representative and was very excited about the business.  (*Id.* ¶ 18.)  Golliver responded, "Great!!!  It is strong! Cheaper route than [Pet Supplies Plus]."  (*Id.* (alterations in original).)

In reliance upon FCI and Golliver's representations that they were "franchise experts" with decades of experience, that they had superior knowledge, and that Golliver would coach him through the due diligence process, Hasko believed all of FCI and Golliver's representations as statements of fact, and relied upon Golliver's superior knowledge of franchising and professed expertise, and upon the specific representations that Golliver had made in deciding to purchase an ILKB franchise.  (*Id.* ¶ 20.)  Based on this reliance, Hasko invested $145,000 in franchise fees for five territories; over $250,000 in outfitting his first studio; and undertook substantial lease and loan obligations.  (*Id.*) Plaintiffs' location opened on July 31, 2017.  (*Id.*)  Contrary to FCI and Golliver's

representations, Plaintiffs' franchise has not been profitable and has accumulated operating losses in excess of $300,000, which are continuing, and Plaintiffs owe a minimum of $370,000 on their lease. (*Id.* ¶ 22.)

After opening the business, Plaintiffs learned that the representations that FCI and Golliver had made to Hasko relating to ILKB franchises were untrue, including: that the franchise was suitable for absentee ownership (instead requiring constant attention by the owner); representations relating to the marketing of the franchise; representations that there had been no closures of ILKB franchises; the expected profit of ILKB franchises; and the costs to franchisees. (*Id.* ¶ 23.) In addition, FCI never disclosed that attrition made it impossible to attain or maintain the levels of membership needed to "break even." (*Id.* ¶ 24.) Plaintiffs were unable to maintain income from existing members because of member attrition and failures to pay, and the franchisor's undisclosed policy of not enforcing, or permitting enforcement of, member contracts and payment obligations. (*Id.*) Defendants also failed to do or disclose their due diligence by not discovering or communicating to Plaintiffs the existence of lawsuits and a bankruptcy related to ILKB's founder and its affiliates. (*Id.* ¶ 25.) Plaintiffs assert that had they known of this information they would not have purchased any franchises from ILKB. (*Id.*)

Plaintiffs assert claims for relief against Defendants for their alleged violations of the New York Franchise Sales Act, N.Y. Gen. Bus. L. 680 *et seq.* and the New Jersey Consumer Fraud Act, NJSA § 56:8-1. Plaintiffs also assert claims against Defendants for common law fraud and negligent misrepresentation.

Defendants move to dismiss Plaintiffs' New York Franchise Sales Act ("NYFSA") and New Jersey Consumer Fraud Act ("NJCFA") claims.

## II.   LEGAL STANDARD

In considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the pleadings are construed in the light most favorable to the non-moving party, and the facts alleged in the complaint must be taken as true. *See Ashley County, Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009). In addition, a court must afford the plaintiff all reasonable inferences from those allegations. *See Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010). At the same time, to withstand a motion to dismiss under Rule 12(b)(6), litigants must properly plead their claims under Federal Rule of Civil Procedure 8 and meet the principles articulated by the United States Supreme Court in *Iqbal* and *Twombly*.

Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The pleading standard articulated by Rule 8 "does not require detailed factual allegations, but it [does demand] more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citations omitted). A "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Thus, to "survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). "A claim has facial

6

plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (quoting *Twombly*, 550 U.S. at 556). "[T]he plausibility standard, which requires a federal court complaint to state a claim for relief that is plausible on its face, . . . asks for more than a sheer possibility that a defendant has acted unlawfully." *Ritchie v. St. Louis Jewish Light*, 630 F.3d 713, 717 (8th Cir. 2011) (internal quotation and citation omitted). "Determining whether a complaint states a plausible claim for relief will, . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (citation omitted).

> Following *Twombly* and consistent with *Iqbal*, the Eighth Circuit explained:

> While a plaintiff need not set forth "detailed factual allegations," *Twombly*, 127 S. Ct. at 1964, or "specific facts" that describe the evidence to be presented, *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (per curiam), the complaint must include sufficient factual allegations to provide the grounds on which the claim rests. *Twombly*, 127 S. Ct. at 1965 n. 3. A district court, therefore, is not required "to divine the litigant's intent and create claims that are not clearly raised," *Bediako*, 354 F.3d at 840, and it need not "conjure up unpled allegations" to save a complaint. *Rios v. City of Del Rio*, 444 F.3d 417, 421 (5th Cir. 2006) (internal quotation omitted).

*Gregory v. Dillard's, Inc.*, 565 F.3d 464, 473 (8th Cir. 2009).

If matters outside the pleadings "are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). While matters "outside the pleadings" may not be considered in deciding a Rule 12 motion to dismiss, documents "necessarily embraced by the complaint are not matters outside the pleading." *Zean v. Fairview Health Servs.*, 858 F.3d 520, 526 (8th Cir. 2017). Thus, while courts primarily consider the allegations in the complaint in determining

whether to grant a Rule 12(b)(6) motion, courts additionally consider matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned, without converting the motion into one for summary judgment. *Id.*; *see also Miller v. Redwood Toxicology Lab, Inc.*, 688 F.3d 928, 931 n.3 (8th Cir. 2012).

## III.    ANALYSIS

### A.    Plaintiffs' Claim Under the New York Franchise Sales Act

According to Plaintiffs, FCI and Golliver violated the NYFSA by making false representations and omissions to Hasko for the purpose of inducing him to purchase an ILKB franchise.  (Dkt. 15 ¶ 30.)  Defendants argue that the NYFSA claim fails as a matter of law because they are not franchisors, and because they did not offer or sell any franchise to Plaintiffs, given that it was non-party ILKB who offered and sold the franchise at issue and the Amended Complaint does not allege that Defendants offered or sold a franchise to Plaintiffs on behalf of ILKB.  (Dkt. 18 at 6-8.)

Under New York law, "[t]he primary consideration of the courts in the construction of statutes is to ascertain and give effect to the intention of the Legislature." N.Y. Stat. Law § 92.  When the language of a statute is plain, courts are required to follow its mandates.  *See Kimmel v. State*, 29 N.Y.3d 386, 392, 80 N.E.3d 370, 373 (2017) (concluding that courts under New York law should look "first to the plain language of the statute[ ] as the best evidence of legislative intent") (quotation marks and citation omitted); *Better World Real Estate Grp. v. New York City Dep't of Fin.*, 122

8

A.D.3d 27, 35, 992 N.Y.S.2d 247 (2014) (citations omitted) ("[C]ourts should construe clear and unambiguous statutory language as to give effect to the plain meaning of the words used.").  The NYFSA was enacted specifically to prevent, combat, and protect the franchisee from rampant franchise sales fraud, it is remedial in nature, and therefore, is to be liberally construed.  *See A.J. Temple Marble & Tile, Inc. v. Union Carbide Marble Care, Inc.*, 162 Misc. 2d 941, 951, 618 N.Y.S.2d 155, 161 (Sup. Ct. 1994), *aff'd*, 214 A.D.2d 473, 625 N.Y.S.2d 904 (1995), *aff'd as modified*, 87 N.Y.2d 574, 663 N.E.2d 890 (1996) (citations omitted).  In that interpretative context, courts are obliged to 'harmonize the various provisions' of a statute to achieve its legislative purpose." *Id.* (citations omitted).

The NYFSA provides that the following conduct is unlawful:

2. It is unlawful **for a person, in connection with** the **offer,** sale **or purchase of any franchise**, to directly or indirectly:

(a) Employ any device, scheme, or artifice to defraud.

(b) Make any untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.  It is an affirmative defense to one accused of omitting to state such a material fact that said omission was not an intentional act.

(c) Engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person.

N.Y. Gen. Bus. Law § 687(2) (emphases added).  "A **person who offers or sells** a franchise in violation of . . . [§ 687] is liable to the person purchasing the franchise for damages and, if such violation as willful and material, for rescission, with interest at six

percent per year from the date of purchase, and reasonable attorney fees and court costs."

N.Y. Gen. Bus. Law § 691(1) (emphasis added).

### 1.    Whether Defendants Are "Persons" Under the NYFSA

While Defendants' arguments turn on the argument that it was ILKB as the

franchisor who offered and sold the franchises at issue, that argument ignores the plain

meaning of the NYFSA of who can be held liable under the Act.  Even assuming that

ILKB is the franchisor, liability under the NYFSA is not limited to franchisors; rather it

extends broadly to "person[s]," which is defined under the NYFSA as follows:

> "Person" means an individual, corporation, partnership, joint venture,
> association, company, trust, unincorporated organization or other entity and
> shall include any other person that has a substantial interest in or effectively
> controls such person, as well as the individual officers, directors, general
> partners, trustees or other individuals in control of the activities of each such
> person.

N.Y. Gen. Bus. Law § 681(13).  Indeed, Defendants, notwithstanding their contention

that they did not offer to sell or did not in fact sell a franchise as required for liability

under the NYFSA, they do not contest that they are persons for the purposes of §

681(13).

### 2.    Whether Defendants' Alleged Conduct Amounts to an "Offer" or an "Offer to Sell" Under the NYFSA.

Plaintiffs argue that Defendants' conduct amounts to a solicitation to them to buy

an ILKB franchise.  (Dkt. 22 at 7.)  Defendants' assertion that no liability can attach to

them under the NYFSA because there are no allegations in the Amended Complaint that

they sold or offered to sell an ILKB franchise to Plaintiffs relies on an overly narrow

construction of the term "offer" under the NYFSA. The NYFSA defines "offer" as follows:

> "Offer" or "offer to sell" includes **any attempt to offer to dispose of, <u>or solicitation of an offer to buy,</u> a franchise or interest in a franchise for value**. The terms "offer" and "offer to sell" do not include the renewal or extension of an existing franchise where there is no interruption in the operation of the franchised business by the franchisee.

N.Y. Gen. Bus. Law § 681(11) (emphases added).

The word "solicitation" is not defined within the NYFSA. Under New York law, courts "are to construe words of ordinary import with their usual and commonly understood meaning, and in that connection have regarded dictionary definitions as 'useful guideposts' in determining the meaning of a word or phrase." *Rosner v. Metro. Prop. & Liab. Ins. Co.*, 96 N.Y.2d 475, 479-80, 729 N.Y.S.2d 658, 660 (2001) (citation omitted). The plain meaning of the word "solicitation" is found in the dictionary; it in relevant part, means the "act or an instance of requesting or seeking to obtain something" or "[a]n attempt or effort to gain business." *Solicitation, Black's Law Dictionary* (11th ed. 2019); *see generally, Wis. Dep't of Revenue v. William Wrigley, Jr., Co.*, 505 U.S. 214, 223 (1992) ("'Solicitation,' commonly understood, means 'asking' for, or 'enticing' to, something[.]") (citing *Black's Law Dictionary* (6th ed. 1990)).

Here, the Amended Complaint alleges that FCI held itself out as directing prospective franchisees to high quality franchise businesses and Golliver represented that she prided herself on only working with the best franchise organizations. (Dkt. 15 ¶¶ 12-13.) FCI and Golliver allegedly proceeded to "push" the ILKB franchise as the best choice for Plaintiffs (Dkt. 15 ¶ 16); pressured Plaintiffs to make a quick decision on the

purchase of a franchise given the high demand for ILKB franchises (*id.* ¶ 17); made a number of representations regarding favorable reasons why Plaintiffs should purchase an ILKB franchise (*id.* ¶ 19); and told Plaintiffs that an ILKB franchise would be a "strong" choice and cheaper than other franchises considered by Plaintiffs (*id.* ¶ 18).  Given the NYFSA's broad language under § 687(2) prohibiting fraud "**in connection with** the offer, sale or purchase of any franchise" and the statute's broad remedial purpose, the Court finds that Plaintiffs have plausibly alleged that FCI solicited from Plaintiffs an offer to buy an ILKB franchise, as evidenced by Defendants' alleged representations set forth above made to entice an offer from Plaintiffs for an ILKB franchise.  While Defendants argue that none of these solicitations amounted to an offer (Dkt. 24 at 5-6), this argument ignores the fact that the definition of an "offer" includes solicitation by Defendants of an offer from Plaintiffs to purchase a franchise, which is adequately alleged in the Amended Complaint.  *See Reed v. Oakley*, 172 Misc. 2d 655, 658, 661 N.Y.S.2d 757, 759 (Sup. Ct. 1996), *aff'd*, 240 A.D.2d 991, 659 N.Y.S.2d 820 (1997) ("The conduct covered by the definition is not limited to the act of signing on the dotted line after the solicitation is made.  Here, the solicitation and other negotiations were made prior to approval, and, by definition, amounted to an offer to sell prior to approval.").  Simply put, Plaintiffs have adequately alleged for purposes of the NYFSA that Defendants' communications taken together were seeking to obtain and entice from Plaintiffs an offer to purchase an ILKB franchise.

Again, Defendants' arguments focus on the fact that the Amended Complaint does not allege that they are in the business of selling franchises or that they sold a franchise in

this case.  (Dkt. 24 at 3.)  However, the NYFSA separately defines "franchisor" as "a person who grants a franchise."  N.Y. Gen. Bus. Law § 681(5).  Had the New York Legislature only meant for liability to attach to franchisors, they simply could have defined a "Person" as a Franchisor consistent with § 681(5).  Instead, as set forth above, they defined it expansively.  Moreover, while the Court agrees that there is no dispute that the ultimate transaction involving the sale of the franchise was between ILKB and Plaintiffs, the word "solicit" does not confine itself to a franchisor and the ultimate act of the offer and acceptance.  *See generally*, *Reed*, 172 Misc. 2d at 658 ("The conduct covered by the definition is not limited to the act of signing on the dotted line after the solicitation is made."); *Pinter v. Dahl*, 486 U.S. 622, 643 (1988)[1] (finding with respect to the Securities Act that "[u]nder these definitions, the range of persons potentially liable under § 12(1) is not limited to persons who pass title.  The inclusion of the phrase 'solicitation of an offer to buy' within the definition of 'offer' brings an individual who engages in solicitation, an activity not inherently confined to the actual owner, within the

---

[1]    The Supreme Court went on to explain that:

> [B]rokers and other solicitors are well positioned to control the flow of information to a potential purchaser, and, in fact, such persons are the participants in the selling transaction who most often disseminate material information to investors.  Thus, solicitation is the stage at which an investor is most likely to be injured, that is, by being persuaded to purchase securities without full and fair information.

*Id.* at 646-47.  This is similar to the scenario alleged here, where "brokers" (Dkt. 15 ¶ 6) such as FCI are poised to control the information disseminated to prospective franchisees and it is at this solicitation stage where prospective franchisees are likely to be persuaded to purchase an ILKB franchise, especially where FCI and its agents are allegedly acting as an independent source of information.

scope of § 12").

Defendants argue for the first time in their reply that the remedies section of the NYFSA makes it clear that the NYFSA applies to franchisors, not Defendants. (Dkt. 24 at 8-9.) Courts generally do not consider substantive matters that are raised for the first time in a reply memorandum. *See* LR 7.1(c)(3)(B); *see also Unison Co. v. Juhl Energy Dev., Inc.,* No. CV 13-3342 ADM/BRT, 2018 WL 4426204, at *4 (D. Minn. Sept. 17, 2018) (citations omitted). Not only does the Court reject this argument on this procedural basis, it also rejects the argument on its merits. The remedies provision of the NYFSA provides:

> A person who offers or sells a franchise in violation of section six hundred eighty-three, six hundred eighty-four or six hundred eighty-seven of this article **is liable to the person purchasing the franchise <u>for damages and</u>, if such violation as willful and material, for <u>rescission</u>**, with interest at six percent per year from the date of purchase, and reasonable attorney fees and court costs.

N.Y. Gen. Bus. Law § 691(1) (emphases added). Defendants argue that the language of Section 691 undercuts Plaintiffs' arguments that they can be held liable under the NYFSA because the remedy of rescission within this provision can only be granted through ILKB, the franchisor. (Dkt. 24 at 8-9.)

The fact that the remedies under the NYFSA include rescission along with damages as possible remedies does not mean that the NYFSA can only apply to franchisors or that a person cannot seek one remedy without seeking the other. Such an interpretation is contrary to the clear language of the statute. By way of example, there is no dispute that an employee of a "person" as defined under the NYFSA can be held liable under the NYFSA. *See* N.Y. Gen. Bus. Law § 691(3) (employees can be held liable to

the same extent as an employer).  However, under Defendants' argument, such an employee could not be held liable because obviously the employee, even if they are an employee of a franchisor, does not have the ability to effect a rescission.  Simply put, Defendants' interpretation would rewrite the definition of "person" under the act to only mean a franchisor.  Given the expansive scope as to what includes a "person" and "offer" under the plain language of the NYFSA, the fact that the statute was "enacted specifically to prevent, combat and protect the franchisee from rampant franchise sales fraud," *A.J. Temple Marble & Tile, Inc.*, 162 Misc. 2d at 951, and the need to harmonize the various provisions of the NYFSA to effectuate this purpose, *id.*, the Court finds that the intent of the New York Legislature was not only to punish franchisors but to ensure that brokers, such as FCI and their agents, are held accountable for the resulting harm to franchisees from their alleged fraudulent statements that franchisees acted in reliance on when deciding to purchase a franchise, even if the purchase is from a different party.

### 3.    Whether the Sale or Offer to Sell Occurred in New York.

Defendants also argue that dismissal of the NYFSA claim here is necessary under General Business Law § 683 because there are no allegations that Defendants or Plaintiffs have connections with New York or that any of the interactions between Plaintiffs and Defendants occurred in New York.  (Dkt. 18 at 8-9.)  Plaintiffs counter that the NYFSA applies in this case because FCI and Golliver solicited Plaintiffs to purchase an ILoveKickBoxing franchise from ILKB, and ILKB accepted Plaintiffs' offer to buy in New York.  (Dkt. 22 at 6-7, 11-13.)

"The New York Franchise Sales Act [ ], GBL §§ 680-695, governs franchise transactions, but only when the sale or offer to sell occurs in New York." *EV Scarsdale Corp. v. Engel & Voelkers N. E. LLC*, 48 Misc. 3d 1019, 1028 (N.Y. Sup. Ct. 2015) (citing *A Love of Food I, LLC v. Maoz Vegetarian USA, Inc.*, 70 F. Supp. 3d 376, 393 (D.D.C. 2014), citing *JM Vidal, Inc. v. Texdis USA, Inc.*, 764 F. Supp. 2d 599, 616-17 (S.D.N.Y. 2011) ("[T]he NYFSA is applicable only to specific transactions solicited or accepted in New York, or affecting New York."), quoting *Century Pac., Inc. v. Hilton Hotels Corp.*, 2004 WL 868211, at *5 (S.D.N.Y. 2004)); *see generally,* N.Y. Gen. Bus. Law § 681(12)[2] (defining for the purposes of necessary disclosures under § 683 when an offer is made in New York).

---

[2]    Section 681(12) provides:

(a) An offer or sale of a franchise is made in this state when an offer to sell is made in this state, or an offer to buy is accepted in this state, or, if the franchisee is domiciled in this state, the franchised business is or will be operated in this state.

(b) An offer to sell is made in this state when the offer either originated from this state or is directed by the offeror to this state and received at the place to which it is directed. An offer to sell is accepted in this state when acceptance is communicated to the offeror from this state.

(c) An offer to sell is not made in this state merely because a publisher circulates or there is circulated on his behalf in this state a bona fide newspaper or other publication of general, regular and paid circulation which has had more than two-thirds of its circulation outside this state during the past twelve months, or a radio or television program originating outside this state is received in this state.

N.Y. Gen. Bus. Law § 681(12).

In this case, the Amended Complaint alleges that ILKB offered and sold franchises only in and from New York State.  (Dkt. 15 ¶ 8.)  Given that the communications at issue allegedly induced Plaintiffs to ultimately make an offer to purchase a franchise in New York, Plaintiffs' claim is governed by the NYFSA.

### 4.    Conclusion

For all of the reasons set forth above, Plaintiffs have adequately alleged a plausible claim against Defendants under the NYFSA and the Motion to Dismiss this claim should be denied.

## B.    Plaintiffs' Claim Under the New Jersey Consumer Fraud Act

Defendants argue that while the NJCFA applies to the sale or advertisement of merchandise and real estate, it does not apply to the sale of franchises.  (Dkt. 18 at 9.)

Under the NJCFA:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, **in connection with the sale or advertisement of any merchandise or real estate**, or with the subsequent performance of such person as aforesaid, whether or not any person has in fact been misled, deceived or damaged thereby, is declared to be an unlawful practice; provided, however, that nothing herein contained shall apply to the owner or publisher of newspapers, magazines, publications or printed matter wherein such advertisement appears, or to the owner or operator of a radio or television station which disseminates such advertisement when the owner, publisher, or operator has no knowledge of the intent, design or purpose of the advertiser.

N.J. Stat. § 56:8-2 (emphasis added).  Although the Act is entitled "[a]n Act concerning consumer fraud, its prevention, and providing penalties therefor," L. 1960, c. 39, it contains no definition of consumer.  Under the Act, "[t]he term 'merchandise' shall

include any objects, wares, **goods, commodities, services <u>or anything</u> offered, directly or indirectly to the public for sale** . . . ."  N.J. Stat. § 56:8-1(c) (emphases added).

Defendants initially relied upon a Third Circuit decision holding that the NJCFA can never apply to the sale or acquisition of a franchise (Dkt. 18 at 10-11):

> We conclude that even where franchises or distributorships are available to the public at large in the same sense as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, not consumer goods or services.  They never are purchased for consumption.  Instead, they are purchased for the present value of the cash flows they are expected to produce in the future and, like the technology and services acquired in BOC Group, bear no resemblance to the commodities and services listed in the statutory definition of "merchandise" or the rules promulgated by the Division of Consumer Affairs.

*J & R Ice Cream Corp. v. California Smoothie Licensing Corp.*, 31 F.3d 1259, 1274 (3d Cir. 1994); *see also Lawmen Supply Co. of New Jersey, Inc. v. Glock, Inc.*, 330 F. Supp. 3d 1020, 1045 (D.N.J. 2018) (citations omitted) ("[T]he majority of Courts in this district have followed the Third Circuit's interpretation of the NJCFA.").

Plaintiffs counter that since the Third Circuit's decision, the New Jersey Supreme Court in its *All the Way Towing, LLC v. Bucks Cty. Int'l, Inc.*, 236 N.J. 431 (2019), decision implicitly rejected *J & R Ice Cream*'s reasoning and set forth clear factors for determining whether "merchandise" is at issue; and that under those factors, the sale of a franchise constitutes the sale of "merchandise" and the sale of the ILKB franchise falls squarely within the Act.  (Dkt. 22 at 17-20.)

The matter in *All the Way Towing* involved a dispute between businesses related to the purchase of a customized tow truck.  *See All the Way Towing*, 236 N.J. at 435-37. The court first reiterated that "it is well established that the CFA is applicable to

commercial transactions." *Id.* at 443 (quotation marks and citations omitted). Noting that the history of the NJCFA has been "one of constant expansion of consumer protection," the Court also found that the customization of an item does not in itself remove it from the definition of merchandise under the NJCFA as an item available "to the public," and concluded that "a more nuanced assessment can be required to determine whether a transaction, good, or service is of the type offered to the public, bringing it within the CFA." *Id. at* 442, 445 (cleaned up).

The nuanced analysis expounded by the New Jersey Supreme Court with respect to business-to-business transactions, such as the one at issue in this case, involves looking at the "nature of the transaction" to determine whether it fits within the CFA's definition of "merchandise," and takes into account the following factual considerations:

> (1) the complexity of the transaction, taking into account any negotiation, bidding, or request for proposals process; (2) the identity and sophistication of the parties, which includes whether the parties received legal or expert assistance in the development or execution of the transaction; (3) the nature of the relationship between the parties and whether there was any relevant underlying understanding or prior transactions between the parties; and, as previously noted; (4) the public availability of the subject merchandise.

*Id.* at 447-48.

The New Jersey Supreme Court then undertook a factual analysis and concluded that the customized tow truck fell within the definition of merchandise, noting that no attorney or expert was needed to execute the transaction, that simply because identically customized tow trucks are not typically sold to the "public at large" does not mean the trucks are not offered "to the public for sale," and that "the relevant point is that a

member of the public so inclined could purchase an operational tow truck consisting of a Dynamic 801 tow body installed onto an International chassis." *Id.* at 448.

Defendants argue that the franchise agreement at issue (Dkt. 22-1) supports a finding that a franchise is not available to the public as it is within non-party ILKB's discretion whether to grant a franchise based on an examination of a prospective franchisee's business experience, reputation, character, and ability to conduct the business. (Dkt. 24 at 11-12.) Defendants, however, ignore the *All the Way Towing* holding that the public "availability requirement can be met by showing that any member of the public could purchase the product or service, **if willing <u>and able</u>**, regardless of whether such a purchase is popular." *All the Way Towing*, 236 N.J. at 447 (emphases added). In other words, the fact that some members of the public in general may not be able to meet ILKB's purported standards does not take a franchise outside of the definition of merchandise for the purposes of the NJCFA. Moreover, regardless of the franchise agreement, whether ILKB franchises are available to the public under the *All the Way Towing* factors is a factual dispute not appropriately resolved on a motion to dismiss, as discovery will be necessary to determine what ILKB's real standards in practice, if any, except for the ability to pay, mattered.

Similarly, Defendants rely upon the length of the franchise agreement with ILKB, and the fact that the agreement provides what appears to be a boilerplate contract provision acknowledging that Plaintiffs had the opportunity to consult with counsel for the proposition that the transaction was complex and that the parties were sophisticated. Again, while this is relevant evidence, the Court cannot find as a matter of law at this

stage in the proceedings that the franchise at issue does not qualify as merchandise based

on the franchise agreement.[3]  Discovery will be necessary to provide the Court with a

complete understanding of the actual complexity of the transaction and sophistication of

the parties, including whether they independently sought the assistance of attorneys and

other financial professionals prior to entering into the franchise agreement, along with

evidence relating to the other factors relevant to the *All the Way Towing* analysis to make

an appropriate and "more nuanced assessment" at summary judgment.  *See All the Way*

*Towing*, 236 N.J. at 445.  Defendants also argue that the *All the Way Towing* decision did

not alter the key determination in the Third Circuit case that the NJCFA does not apply to

franchises because franchises are not merchandise, especially since the Third Circuit

concluded that a franchise is a business and not goods or services for consumers.  (Dkt.

24 at 13-14.)  Indeed, as set forth above, the Third Circuit in *J & R Ice Cream* found that

while "franchises or distributorships are available to the public at large in the same sense

---

[3]      Defendants argue that the transaction in the present case is similar to the
transaction in *Finderne Management Co., Inc. v. Barrett,* 955 A.2d 940, 402 N.J. Super.
546 (App. Div. 2008), which involved a 64-page disclosure that led, in part, to the
conclusion that the NJCFA did not apply to the transaction.  (Dkt. 24 at 12.)  However,
the decision in *Finderne Management,* which dealt with a decision on summary
judgment, did not involve a franchise, but rather "a tax-deductible vehicle to fund pre-
retirement death benefits for owner-employees."  402 N.J. Super. at 553.  The court did
ultimately hold that the CFA was inapplicable, but cited a number of fact-specific reasons
after discovery including that: the contract included a "sixty-page disclosure document"
and recommendations to consult tax attorneys; rather than one transaction, it was a series
of "very complex" transactions, which took place over the course of years; and the
Plaintiffs were not "unsophisticated buyers," but rather were ultimately informed through
advice from an accountant and an attorney.  *Id.* at 554-57, 570-73.  Again, the Court does
not find that the franchise in this case is definitively merchandise for the purposes of the
NJCFA, but rather because the *All the Way Towing* analysis is such a fact driven analysis,
it is a decision appropriate for resolution at summary judgment or trial, not on a motion to
dismiss.

as are trucks, boats or computer peripherals, they are not covered by the Consumer Fraud Act because they are businesses, not consumer goods or services. They never are purchased for consumption." 31 F.3d at 1274. The Third Circuit's interpretation of New Jersey state law is not binding on this Court, and the Court finds the Third Circuit's 1994 interpretation of "merchandise" in the *J & R Ice Cream* overly narrow given that the definition in the Act includes "any objects, wares, goods, commodities, services **or anything** offered, directly or indirectly to the public for sale . . . ." N.J. Stat. § 56:8-1(c) (emphasis added).

Moreover, at least one New Jersey Court of Appeals (as opposed to the federal district courts out of the District of New Jersey bound by the Third Circuit's decision)[4] has rejected the narrow scope of the decision in *J & R Ice Cream* with respect to franchises. In *Kavky v. Herbalife International of America*, 359 N.J. Super. 497, 820 A.2d 677 (App. Div. 2003), the court rejected the Third Circuit's focus on whether the plaintiff was a consumer in terms of a business transaction, noting that there was no definition within the NJCFA as to who would be included as a consumer under the Act, and found that the Third Circuit had ignored the definition of merchandise under the Act. 359 N.J. Super. at 500-02. Indeed, the court found that at issue was:

> [W]hether the purchaser of a franchise distributorship is protected by the Act, or to put it somewhat differently, do franchises and distributorships come within the Act's definition of merchandise. Our answer is that they are included when they are not covered by the Franchise Practices Act and are offered to the general public.

---

[4]    The Court notes that New Jersey state courts are not bound by the decisions of the Third Circuit. *See Donovan v. Port Auth. Trans-Hudson Corp.*, 309 N.J. Super. 340, 351, 707 A.2d 171, 177 (App. Div. 1998).

*Id.* at 501. The court found that a franchise not regulated by the Franchise Practices Act "involves the provision of both services and commodities. Thus, it is covered as something offered to the public for sale" under the definition of merchandise. *Id.* at 508.[5]

The Court finds that decision in *Kavky* more persuasive than the Third Circuit's holding under *J & R Ice Cream*, given the broad definition of "merchandise" under NJCFA, which can include "anything," subject to the analysis set forth by New Jersey Supreme Court in *All the Way Towing*, which will require this Court to undertake a nuanced fact-intensive inquiry to determine if the franchise at issue was actually available to the public for sale. In other words, the Court concludes that a franchise, as alleged in the Amended Complaint, can constitute merchandise under New Jersey law. That assertion will be tested via discovery in accordance with the factors set forth in *All the Way Towing*, *supra*, to determine if the ILKB franchise was offered, directly or indirectly, to the public for sale. As such, Defendants' motion to dismiss Plaintiffs' NJCFA claim should be denied.[6]

---

[5]     No party has asserted that the franchise at issue is governed by the New Jersey Franchise Practices Act.

[6]     Plaintiffs also argue in their opposition that the services provided by Defendants in finding Plaintiffs franchise opportunities also qualify as "merchandise" under the NJCFA (Dkt. 22 at 27-28), as the Act governs a broad array of activities, including "services" and covers "anything offered, directly or indirectly, to the public for sale." N.J. Stat. § 56:8-1(c). While there are some allegations in the Amended Complaint intimating that Defendants provided Plaintiffs with a service, there is no assertion in Count IV, (similar to that found in a later related matter (19-cv-1414)), asserting that the NJCFA claim was based on services provided by Defendants, as opposed to the offer and sale of a ILKB franchise as alleged. As such, the Court reaches no determination on the issue of whether Defendants provided "services" within the NJCFA because the NJCFA Count is not based on such a theory.

## IV.    <u>RECOMMENDATION</u>

Based on the above, and on the files, records, and proceedings herein, **IT IS**

**HEREBY RECOMMENDED** that: Defendants' Motion for Partial Dismissal Pursuant

to Rule 12(b)(6) (Dkt. 16) be **DENIED**.

DATED: December 19, 2019                *s/ Elizabeth Cowan Wright*
                                        ELIZABETH COWAN WRIGHT
                                        United States Magistrate Judge

### <u>NOTICE</u>

This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under District of Minnesota Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. D. Minn. LR 72.2(b)(2).  All objections and responses must comply with the word or line limits set for in D. Minn. LR 72.2(c).